**SO ORDERED.**

**SIGNED this 31 day of March, 2011.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RIM DEVELOPMENT, LLC | ) | Case No. 10-10132 |
| | ) | **Chapter 11** |
| | ) | |
| Debtor-in-Possession. | ) | |
| _____ | ) | |
| | ) | |
| RIM DEVELOPMENT, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 10-5093 |
| | ) | |
| KANSAS DEPARTMENT OF TRANSPORTATION, | ) | |
| COREFIRST BANK AND TRUST, | ) | |
| TEXTRON FINANCIAL CORPORATION, | ) | |
| BG CONSULTANTS, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

-1-

**ORDER GRANTING IN PART AND DENYING IN PART
TEXTRON FINANCIAL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT
AGAINST DEFENDANT BG CONSULTANTS, INC.**

Defendant Textron Financial Corporation ("TFC") moves for summary judgment on Defendant BG Consultants, Inc.'s ("BG") claim that BG's mechanic's lien against the debtor's real property is senior in priority to any liens or claims filed after May 15, 2006.[1] TFC questions the legal sufficiency of BG's lien because BG did not foreclose on its initial lien statement within a year of its filing and now seeks to revive those lapsed claims for work covered in the initial lien statement by filing a subsequent lien statement. TFC also claims that the second lien statement does not reasonably itemize the work for which BG seeks to be paid. Defendant CoreFirst Bank and Trust ("CFB") joins TFC's motion for summary judgment and seeks a determination that its secured claims against the debtor's real property have priority over BG's claims.[2] After careful review of the motions, memoranda, and arguments of the parties, the Court is prepared to rule.[3]

*Background*

Debtor RIM Development, L.L.C. ("RIM") filed its Chapter 11 petition on January 22, 2010. On January 29, 2010, the Kansas Department of Transportation ("KDOT") filed a motion for relief from stay to proceed with an already-pending eminent domain proceeding in the District Court of

---

[1] Dkt. 26.

[2] Dkt. 30.

[3] The Court heard oral arguments on November 16, 2010. Debtor appeared by its attorney Susan Saidian; TFC appeared by its attorney John McClelland; CFB appeared by its attorney Thomas J. Lasater; BG appeared by its attorney William J. Bahr; Riley County appeared by its attorney Craig D. Cox; and the U.S. Trustee's Office appeared by its attorney William Shantz.

Riley County, Kansas. On February 17, 2010, this Court granted KDOT conditional relief from the stay.[4] Pursuant to that order, a hearing was held in Riley County District Court on March 10, 2010, which ultimately resulted in an award of damages in favor of RIM in the amount of $1,478,200 (the "Award").

RIM appealed the Award on March 29, 2010, which initiated a new civil action in Riley County District Court pursuant to Kan. Stat. Ann. § 26-508. RIM commenced this adversary proceeding on April 26, 2010 to remove the eminent domain appeal to this Court, seeking this Court's determination on the value of the Award and its allocation.[5] TFC, CFB, BG, Kolde Construction, and Riley County all claim an interest in the Award by virtue of various mortgages, mechanics' liens, *lis pendens*, and tax liens. KDOT filed a jury trial demand[6] and a motion to determine that this adversary action was not a core proceeding and for abstention and remand of this case to Riley County District Court.[7] KDOT also sought to withdraw the reference of this adversary proceeding to the Riley County District Court.[8] Thereafter, RIM and KDOT reached an agreement regarding the final amount of the Award resolving the procedural and jurisdictional issues, but leaving open the issue of how to allocate the Award among the various claimants.[9] On September

---

[4] Dkt. 96 in BR case 10-10132.

[5] Dkt. 1.

[6] Dkt. 11.

[7] Dkt. 12.

[8] Dkt. 14.

[9] Dkt. 25 ("Agreement has been reached with KDOT on the eminent domain [] issue[] for $2 million. The signage eminent domain action was settled for $60,000. Notice of Intended Compromise to be noticed. KDOT will be removed as a party and the allocation issues [] will

-3-

30, 2010, pursuant to the parties' agreement, the Court denied KDOT's motions and dismissed KDOT from this case.[10]

TFC filed this motion seeking judgment as a matter of law that BG does not have a lien upon RIM's real property and has no claim to any portion of the Award.[11] CFB filed a memorandum in support of TFC's motion for summary judgment, seeking a determination that its secured claims have priority over BG's claims.[12] BG maintains that although it failed to foreclose on the lien statement it initially filed in 2008, it nonetheless has a valid and enforceable lien against RIM's property by virtue of its timely filing and foreclosure of a subsequent lien statement. BG claims its mechanic's lien has priority over TFC's and CFB's mortgages because it attached prior to the execution and recording of those mortgages. Alternatively, BG argues that a dispute exists regarding the sufficiency of BG's second lien statement which makes summary judgment inappropriate.

***Summary Judgment Standards***

Federal Rule Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."[13] The Court's function in reviewing a motion for summary

---

remain.").

[10] Dkts. 25, 31, 32, 33, and 34.

[11] Dkt. 26.

[12] Dkt. 30.

[13] All future references to "Rule" will refer to the Federal Rules of Civil Procedure, which apply to adversary proceedings under Federal Rule Bankruptcy Procedure 7001, *et seq.*, unless otherwise noted. Before December 1, 2010, Rule 56 provided that summary judgment should be rendered if there is *"no genuine issue as to any material fact* and that the movant is entitled to judgment as a matter of law."

-4-

Case 10-05093    Doc# 54    Filed 03/31/11    Page 4 of 16

judgment is to first determine whether genuine disputes as to material facts exist for trial. In making this determination, the Court may not weigh the evidence nor resolve fact issues.[14] The Court must construe the record in a light most favorable to the party opposing the summary judgment.[15]

Once the Court determines which facts are not in dispute, it must then determine whether those uncontroverted facts establish a sufficient legal basis upon which to grant movant judgment as a matter of law.[16] If different ultimate inferences may properly be drawn from the facts, summary judgment is not appropriate.[17]

***Uncontroverted Facts***

The following facts are established for the purpose of trial in this proceeding.[18] BG is an engineering firm engaged in the business of architectural work, engineering, surveying and mapping, and construction administration. RIM engaged BG to perform these services at its mixed-use development near Ogden, in Riley County. On August 29, 2008, BG filed a mechanic's lien statement pertaining to the RIM property (the "2008 Lien Statement"). The 2008 Lien Statement covered "professional services from January 31, 2007 to August 20, 2008 and represents the past due

---

[14] *First Sec. Bank of New Mexico, N.A. v. Pan Am. Bank*, 215 F.3d 1147, 1154 (10th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)); *Concrete Works of Colo., Inc. v. City and Cnty of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (Court may not resolve disputed questions of fact at the summary judgment stage).

[15] *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir. 1988) (citation omitted).

[16] *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F.Supp. 406, 407 (D. Kan. 1986) (Even if there are no genuine issue of material fact, the movant still has the burden to show it is entitled to judgment as a matter of law.).

[17] *Sec. Nat. Bank v. Belleville Livestock Comm'n Co.*, 619 F.2d 840, 847 (10th Cir. 1979).

[18] *See* Fed. R. Civ. P. 56(g), made applicable here by Fed. R. Bank. P. 7056.

balance of $503,154.71." In support of its claims, BG attached 90 invoices describing services it had performed for RIM in the time period (the "Lapsed Work"). The statement also indicated that BG "last furnished labor, equipment, material and supplies under contract with the contractors on the 29th day of August, 2008." BG did not file an action to foreclose the 2008 Lien Statement within one year of the date of its filing.

On September 11, 2009, two days after TFC filed an action to foreclose its mortgages on the RIM property, BG filed a second mechanic's lien statement (the "2009 Lien"). This Statement includes an itemized spreadsheet that lists 111 billing entries, including the Lapsed Work. BG then filed a pleading in TFC's foreclosure case seeking to foreclose the 2009 Lien. As of January 22, 2010, RIM owes BG $602,410.65, plus interest at a rate of 5% per annum.

CFB holds 17 notes totaling $3,047,727.38 that are secured by various real estate mortgages dated December 21, 2006, January 13, 2007, March 14, 2007, March 29, 2007, September 4, 2007, November 6, 2007 and December 21, 2007 covering virtually of RIM"s real estate. CFB has perfected its mortgage liens by recording the mortgages with the Riley County Register of Deeds. TFC claims a first mortgage interest in the 72 townhomes that make up the completed part of the RIM development and a second mortgage interest in the non-townhome part of the project. Nothing in the summary judgment record indicates the recording dates of either CFB's or TFC's liens.

TFC disputes BG's claim that it commenced work on May 15, 2006 because the 2008 Lien Statement recites that the invoices attached to it represent work from January 31, 2007 forward.[19] BG's claim is based on the affidavit of Stephen Berland, its president, which recites the May 2006

---

[19] The Court notes that the earliest dated invoice was January 31, 2008 for services performed during September through December 2007. None of the invoices indicated services performed before September 2007.

-6-

starting date.

On January 22, 2010, RIM filed its Chapter 11 petition.

*Analysis*

TFC and CFB claim that BG cannot revive its lien claim for the Lapsed Work by filing a new lien that describes that work after the 2008 Lien Statement lapsed. BG argues that nothing in the Kansas lien statutes prohibits it from doing so.

Kan. Stat. Ann. § 60-1101 creates a lien in favor of any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property. If it is properly documented and filed, a mechanic's lien is senior in priority to any other liens or encumbrances that are filed after the date the lien claimant commences furnishing labor, equipment, material or supplies at the site of the property subject to the lien. Kan. Stat. Ann. § 60-1102(a) provides that a claimant shall file a verified statement containing the names of the owner of the property and of the claimant, a description of the property and a reasonably itemized statement of the amount of the claim "within four months after the date material, equipment or supplies, used or consumed was last furnished or last labor performed under the contract." Kan. Stat. Ann. § 60-1105(a) provides that a claimant shall file an action to foreclose a lien within one year from the time of the filing the lien statement. Kan. Stat. Ann. § 60-1108 provides that "[i]f no action to foreclose or adjudicate any lien filed under the provisions of this article shall be instituted within the time provided in subsection (a) of Kan. Stat. Ann. § 60-1105, and amendments thereto, the lien shall be considered canceled by limitation of law."

Parties claiming a mechanic's lien have the burden of bringing themselves clearly within the

statutory provisions.[20] "The requirements for a mechanic's lien must be strictly met. It is only after the lien has attached that the mechanic's lien provisions are liberally construed."[21]

### *The Lapsed Work and the 2009 Lien Statement*

BG filed its 2008 Lien Statement on August 29, 2008 for a past due balance of $503,154.71. BG admits that it did not commence an action to foreclose on the 2008 Lien Statement within one year of filing the statement. Under the clear language of Kan. Stat. Ann. § 60-1108, the 2008 Lien Statement is "considered canceled" and is now unenforceable.

BG contends that the cancellation of the 2008 Lien Statement does not extinguish its right to file a successive lien covering the same work. BG argues that because it continued to provide labor, equipment, material and supplies after the 2008 Lien Statement was filed and did not stop performing such work for RIM for a period of 90 days or longer at any time from the commencement of work, nothing prevented BG from filing a successive lien that covers work previously listed. BG urges this Court to construe the Kansas lien statutes as allowing successive lien filings to revive amounts owed for work previously included in an expired mechanic's lien by filing another lien claim within the statutory time limit after the claimant completes work on the project. Unfortunately, neither the statute nor the extensive Kansas case law supports that conclusion. BG relies on cases from Washington, California and New York.[22] These states' courts construe lien

---

[20] *Creme de la Creme (Kansas), Inc. v. R & R Int'l, Inc.*, 32 Kan.App.2d 490, 493, 85 P.3d 205, *rev. denied* 278 Kan. 844 (2004).

[21] *Id.* at 493.

[22] *Geo Exchange Systems, LLC v. Cam,* 65 P.3d 11 (Wash. App. 2003); *Koudmani v. Ogle Enterprises, Inc.*, 47 Cal.App. 4th 1650 (1996); *Electric Supplies Distrib. Co. v. Imperial Hot Mineral Spa*, 122 Cal.App. 3d 131 (1981); *Clark v. Heylman*, 80 N.Y.S. 794 (1903).

-8-

statutes liberally and for the benefit of lien claimants.[23] In contrast, Kansas courts generally require strict compliance with the mechanic's lien statutes.[24] Furthermore, neither California, Washington, nor New York have a cancellation provision similar to Kan. Stat. Ann. § 60-1108 which, as previously noted, provides for the actual cancellation of the lien by operation of law if the time limitation in Kan. Stat. Ann. § 60-1105(a) has not been met.[25]

The cancellation of the 2008 Lien Statement prevented BG from claiming a lien for the same work in the 2009 statement.[26] The filing of a lien statement commences the running of the one-year period for enforcing or foreclosing on a filed lien statement. Kan. Stat. Ann. § 60-1108 makes clear that if no action to foreclose the lien statement is instituted within that period, the lien "shall be considered canceled by limitation of law." Webster's Third New International Dictionary defines the verb "cancel" as "to remove from significance or effectiveness" or "to invalidate for reuse."[27] When BG did not foreclose on the 2008 Lien Statement within a year of its filing, the lien was invalidated as a matter of law by Kan. Stat. Ann. § 60-1108. The cancellation of the 2008 Lien Statement means BG has lost its lien upon RIM's real property to secure payment for any labor,

---

[23] *See* Geo, *Kiell v. AAC Employment Corp.*, 304 N.Y.S. 2d 500, 503 (1969).

[24] *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 230 (2003).

[25] *Geo* is also factually distinguishable because the first lien statement included a notation that the claimant continued to perform work at the site.

[26] The Court notes, but discounts the persuasiveness of the Court of Appeals' unpublished opinion in *Home Lumber Co. v. Teeter*, 793 P.2d 767, 1990 Kan. App. LEXIS 367 (Kan. Ct. App. 1990). That case dealt with a later sale of materials to an owner, done in bad faith for the sole purpose of creating a transaction within the 90-day filing deadline imposed on subcontractors by Kan. Stat. Ann. § 60-1103(a)(1).

[27] Webster's Third New International Dictionary 325 (1976).

equipment, materials or supplies it furnished to RIM listed in the 2008 Lien Statement and, further, is barred from obtaining a valid lien for that work. BG may have an unsecured claim for the value of the work, but its lien has expired.

Holding otherwise would render the cancellation provision of Kan. Stat. Ann. § 60-1108 superfluous. Under the rules of statutory construction, courts do not treat any part of a statute as superfluous.[28] Instead, they attempt to give effect to every word and clause.[29] As Kansas courts have consistently held, "a mechanic's lien, not foreclosed within the time allowed by statute, is no longer an enforceable lien."[30] Kan. Stat. Ann. § 60-1108 prohibited BG from filing a lien for the Lapsed Work after the one-year limitation on the 2008 Lien Statement expired.

***The Remaining Work on the 2009 Lien Statement***

The 2009 Lien Statement states that BG last furnished labor, equipment, material and supplies under contract with the contractors on August, 31, 2009 and that BG's total claim is $590,836.23 as of August 31, 2009. Attached to the 2009 Lien Statement is a spreadsheet that lists 111 bills to RIM, including the Lapsed Work. BG claims it provided RIM with labor, equipment, material and supplies ("Work") from approximately May 15, 2006 until August 31, 2009.[31] As noted above, further lien claims on the Lapsed Work are barred. To the extent BG claims a lien for the

---

[28] *See Driscoll v. Hershberger*, 172 Kan. 145, 155, 238 P.2d 493, 500 (1952).

[29] *See State ex rel. Arn v. Consumers Co-Op Ass'n*, 163 Kan. 324, 343, 183 P.2d 423, 438 (1947).

[30] *Bell v. Hernandez*, 139 Kan. 216, 219, 30 P.2d 1101, 1103 (1934), *quoting Montgomery County Nat'l Bank v. Backus*, 108 Kan. 779, 196 P. 1074 (1921); *Boyce v. Knudson*, 219 Kan. 357, 362, 548 P.2d 712 (1976).

[31] Affidavit of Stephen Berland, president of BG, Dkt. 29-1.

Lapsed Work in the 2009 Lien Statement, that lien is invalid and unenforceable as a matter of law.

The 2009 Lien Statement also includes claims for work from May 15, 2006 until January 30, 2007.[32] The following entries comprise claims for work performed in 2006, but not claimed in the 2008 Lien Statement:

| Entry # | Billing Date | Project Number | Amount |
|---|---|---|---|
| 5 | 9/11/09 | 06-134M | $225.00 |
| 13 | 10/20/08 | 06-690M | $9,420.00 |
| 14 | 11/13/08 | 06-690M | $405.00 |
| 15 | 12/10/08 | 06-690M | $135.00 |
| 16 | 02/10/09 | 06-690M | $135.00 |
| 17 | 05/22/09 | 06-690M | $2,535.00 |
| 18 | 09/11/09 | 06-690M | $3,394.00 |
| | | Total | $16,249.00 |

Unless RIM paid BG for this work before the filing of the 2008 Lien Statement, the Court would have expected it to be listed on that statement. BG offers no explanation for their omission from the 2008 Lien Statement, claiming only that it furnished labor or supplies continuously from May of 2006 until August of 2009. The summary judgment record contains Berland's affidavit that the work continued throughout and Robertson's affidavit that corroborates that claim. At the same time, the very lien statement Berland signed under oath in 2008 states that the work claimed for in that statement includes work after January of 2007. Textron claims to controvert BG's statement of fact,

---

[32] In its responsive brief, BG stated that Exhibit A to the 2009 Lien Statement lists two projects, 06-134M and 06-290M, performed in 2006. Dkt. 29 at 19. The first two numbers in the Project Number apparently represents the year. The Court cannot determine from Exhibit A which entries represent work performed in January of 2007. Exhibit A provides billing dates but not actual performance dates.

-11-

but its controversion is unsupported in the record. Nevertheless, the contradictions in BG's affidavit and the 2009 Lien Statement require that the Court conclude that there remain controversies concerning when BG's liened work commenced, whether BC is owed for the work it claims it did between May of 2006 and January of 2007, and whether BG's work has been continuously performed without a 90-day hiatus from May of 2006 to the "last furnished" date claimed on the 2009 Lien Statement.

### *Timeliness of the 2009 Lien Statement.*

BG filed the 2009 Lien Statement on September 11, 2009. TFC argues that the 2009 Lien Statement is untimely because it was filed more than a year after the "last furnished" date BG listed in the 2008 Lien Statement (August 28, 2008). BG counters that the 2009 Lien Statement was timely filed because it was filed approximately two weeks after BG last furnished labor, equipment, material and supplies to RIM on August 31, 2009.

Kan. Stat. Ann. § 60-1102(a) requires a lien to be filed within four (4) months of the date in which the last material or labor was provided. "Although the statute requires timely filing, it does not require the lien statement to include the last date materials or labor were provided. . . [It also] does not require any inclusion or verification of the date supplies or labor were last furnished."[33]

The Kansas Court of Appeals has held that for purposes of determining the timeliness of a mechanic's lien:

> it is not fatal to the lien for the lien statement to have an erroneous date for the time materials or labor were provided, so long as the filing date is within the time specified by the applicable statute from the *actual* date materials or labor were last

---

[33] *Alliance Steel, Inc. v. Piland*, 39 Kan.App.2d 972, 978 (2008).

-12-

supplied by the claimant.[34]

In *Manhattan Mall Co. v. Shult*,[35] the Kansas Supreme Court held that:

> the trial court is not required to accept a contractor's statement concerning the last work date if that statement is contradicted by the evidence. The test as to when a piece of work is completed in order to preserve a mechanic's lien under K.S.A. 60-1101 et seq. is whether the unfinished work was part of the work necessary to be performed under the terms of the original contract to complete the job and comply in good faith with the requirements of the contract.[36]

Thus, any statement in the lien as to last work date may be contradicted by the evidence at trial.

On summary judgment, the Court cannot conclude that the 2009 Lien Statement was filed out of time. Exhibit A attached to the 2009 Lien Statement indicates that BG's last invoice to RIM was dated September 11, 2009 and the statement was filed within four months of that date. As Kansas case law holds, TFC may challenge BG's "last furnished date" at trial.

### *Reasonably Itemized Statement*

Kan. Stat. Ann. § 60-1102(a)(4) requires any person claiming a lien on real property to file with the clerk of the district court "a reasonably itemized statement in the amount of the claim, but if the amount of the claim is evidenced by a written instrument, or if a promissory note has been given for the same, a copy thereof may be attached to the claim in lieu of the itemized statement." The statute does not require the filing of any particular form of mechanic's lien statement, only that the requisite information be included.[37] Kansas courts have defined "reasonably itemized statement"

---

[34] *Id.* at 979 (emphasis added).

[35] 254 Kan. 253, 864 P.2d 1136 (1993).

[36] *Id.,* Syl. ¶2.

[37] *Buchanan v. Overley*, 39 Kan.App.2d 171, 173, 178 P.3d 54 (2008).

-13-

as one "which is neither excessive nor insufficient in detail but which is fair and sufficient to inform the landowner of the claim and to enable him to ascertain whether the material was furnished and the charges fair."[38]

Kansas appellate courts have found statements to be "reasonably itemized" in many different circumstances. A statement that failed to separate the labor cost from the material cost for the installation of a furnace, air conditioner, hood, exterior guttering and downspouts was held reasonably itemized because it enabled the landowner to determine whether the work was performed or the material furnished and whether the amount claimed was reasonable.[39] A barely legible set of invoice copies has been found "reasonably itemized" where the court noted that, despite the poor quality of the copies, it was possible to determine that most of the materials were a type that would have been used in the work and the total charge on each invoice could be read. The court held that this was enough to allow the landowner to determine whether the material was furnished and the amount claimed reasonable.[40] What is most important is that a landowner reviewing a lien statement be able to determine what work is being charged for from the four corners of the statement itself without recourse to extrinsic evidence.[41]

---

[38] *Kopp's Rug Co. v. Talbot*, 5 Kan.App.2d 565, 572, 620 P.2d 1167 (1980); *Scott v. Strickland*, 10 Kan.App.2d 14, 23, 691 P.2d 45 (1984); *Huber Co. v. Desouza*, 32 Kan.App.2d 614, 86 P.3d 1022 (1986).

[39] *Kopp's Rug*, 5 Kan.App.2d at 572.

[40] *Scott*, 10 Kan.App.2d at 23-24.

[41] *Huber*, 32 Kan.App.2d at 616 quoting *Trane Co. v. Bakkalapulo*, 234 Kan. 348, 352, 672 P.2d 586 (1983) ("The lien statement's validity must be ascertained from its four corners.") and citing *Reeves v. Kansas Coop. Wheat Mk't Ass'n*, 136 Kan. 306, 309-310, 15 P.2d 446 (1932) and *Blattner v. Wadleigh*, 48 Kan. 290, 295, 29 P. 165 (1892) for the proposition that statutory liens are valid only if the lien statement is complete by itself.

BG argues that TFC and CFB lack standing to claim that the 2009 Lien Statement does not enable the landowner to ascertain whether the work was completed and whether the charges were fair when RIM admits to the contrary. TFC and CFB each claim an interest in the RIM property by virtue of liens granted them by the owner, RIM. Competing lienholders have a monetary interest in determining the validity and enforceability of liens claimed to be senior in priority to theirs and, accordingly, have standing to challenge the sufficiency of a lien statement.

Examining the four corners of the 2009 Lien Statement, the Court concludes that it categorizes by invoice date and project number the labor, equipment, material and supplies BG furnished RIM as of August 31, 2009. While the spreadsheet provides only a cursory summary of what work was done, it indicates the classes of services performed and ties them to invoice dates and project numbers as well as phases of the overall development. The project descriptions are descriptive and certainly give some indication of the nature of the work done, where it was done, and how BG arrived at the amount due. While there is no question that providing the invoices supporting the work other than the Lapsed Work would have been helpful, the Court concludes the following entries on Exhibit A of the 2009 Lien Statement contain sufficient detail to inform and enable an interested party to ascertain the work furnished and the applicable charges: 5, 13-18, 38-42, 57, 71, 78, 90, 102 and 108. These entries contain descriptions of work that an engineering firm performs, *i.e.*, regulatory review, planning & surveying, traffic study, elevation certification, grading planning, design, and platting.

The Court concludes entries 64, 110, and 111 on Exhibit A of the 2009 Lien Statement contain insufficient detail to inform and enable an interested party to ascertain the work furnished. Neither the project description for entry 64, "Lot 48 - Pool & Bath House," nor the project

-15-

Case 10-05093   Doc# 54   Filed 03/31/11   Page 15 of 16

description for entries 100 and 111, "Hotel Drainage & Earthwork," indicate to the Court what services BG actually furnished. Because those entries are not reasonably itemized, the lien is invalid as to them.

*Conclusion*

TFC's motion for summary judgment is GRANTED to the extent that the 2009 Lien Statement includes the Lapsed Work. TFC's motion for summary judgment is also GRANTED as to claims numbered 64, 100 and 111 in the 2009 Lien Statement for itemization insufficiency. TFC's motion is DENIED to the following extent. The Court concludes that the validity and enforceability of the 18 claims in the 2009 Lien Statement that have not been invalidated remain an issue for trial, as does the date that BG commenced the work and whether BG has worked continuously on the RIM sites since the commencement date.

Counsel for BG shall prepare a draft pretrial order covering the triable issues remaining in this proceeding and the parties shall submit same for the Court's review not later than 28 days after the entry of this Order.

# # #